UNITED STATES COURT OF INTERNATIONAL TRADE
NEW YORK, NEW YORK

BEFORE: THE HONORABLE CLAIRE R. KELLY, JUDGE

| | |
|---|---|
| HOSHINE SILICON (JIA XING) INDUSTRY CO., LTD.,<br><br>　　　　　　　*Plaintiff*,<br><br>　　　　v.<br><br>UNITED STATES OF AMERICA; DEPARTMENT OF HOMELAND SECURITY; UNITED STATES CUSTOMS AND BORDER PROTECTION; ALEJANDRO N. MAYORKAS, *in his official capacity as the Secretary of the Department of Homeland Security*; and TROY A. MILLER, *in his official capacity as the Senior Official Performing the Duties of the Commissioner for U.S. Customs and Border Protection*,<br><br>　　　　　　　*Defendants*. | Court No. 24-00048<br><br>**NONCONFIDENTIAL VERSION** |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Craig A. Lewis
Jonathan T. Stoel
Lindsay K. Brown
Kelly Zhang
HOGAN LOVELLS US LLP
Columbia Square
555 Thirteenth Street, N.W.
Washington, DC 20004-1109
(202) 637-8613
Email: craig.lewis@hoganlovells.com

*Counsel for Plaintiff Hoshine Silicon (Jia Xing) Industry Co., Ltd.*

Date: October 18, 2024

## TABLE OF CONTENTS

**Pages**

I.      **INTRODUCTION**..................................................................................1

II.     **BACKGROUND** .................................................................................2

III.    **ARGUMENT** .....................................................................................5

     A.     Standard of Review ...................................................................6

     B.     Plaintiff has Standing to Bring Its Claims ...............................7

           1.     Plaintiff Has Statutory Standing ....................................7

           2.     Plaintiff has Constitutional Standing ..........................10

     C.     Count One of the Complaint Was Timely Asserted ...............15

IV.    **CONCLUSION** ...............................................................................19

# TABLE OF AUTHORITIES

<u>Page(s)</u>

**Cases**

*Anaheim Gardens v. United States*,
 444 F.3d 1309 (Fed. Cir. 2006)...........................................................................7

*Bowen v. Mich. Acad. of Family Physicians*,
 476 U.S. 667 (1986)............................................................................................8

*Canadian Lumber Trade Ass'n v. United States*,
 517 F.3d 1319 (Fed. Cir. 2008)........................................................... 10, 11, 12, 14

*Canadian Wheat Bd. v. United States*,
 580 F. Supp. 2d 1350 (Ct. Int'l Trade 2008) ......................................................7

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*,
 144 S. Ct. 2440 (2024)........................................................................................16

*Doty v. United States*,
 53 F.3d 1244 (Fed. Cir. 1995)............................................................................4

*Duferco Steel, Inc. v. United States*,
 403 F. Supp. 2d 1281 (Ct. Int'l Trade 2005) ......................................................7

*Gilda Industries, Inc. v. United States*,
 446 F.3d 1271 (Fed. Cir. 2006)................................................................. 11, 13, 15

*Greene v. McElroy*,
 360 U.S. 474 (1959)............................................................................................4

*Havens Realty Corp. v. Coleman*,
 455 U.S. 363 (1982)............................................................................................17

*Int'l Labor Rights Fund v. Bush*,
 357 F. Supp. 2d 204 (D.D.C. 2004).....................................................................1

*Invenergy Renewables LLC v. United States*,
 422 F. Supp. 3d 1255 (Ct. Int'l Trade 2019) .......................................... 11, 12, 13, 14

*Irwin v. Department of Veterans Affairs*,
 498 U.S. 89 (1990)...................................................................................... 17, 18

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014) ............................................................................................ 8

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ............................................................................ 10, 13, 15

*Match–E–Be–Nash–She–Wish Band of Pottawatomi Indians v. Patchak*,
    567 U.S. 209 (2012) ........................................................................................ 6, 7

*Natural Resources Defense Council, Inc. v. Ross*,
    331 F. Supp. 3d 1338 (Ct. Int'l Trade 2018) ............................................... 13

*Ninestar Corp. v. United States*,
    687 F. Supp. 3d 1308 (Ct. Int'l Trade 2024 ............................................... 1, 8

*Pixton v. B & B Plastics, Inc.*,
    291 F.3d 1324 (Fed. Cir. 2002) ....................................................................... 6

*Ramirez v. Dep't of Homeland Sec.*,
    975 F.3d 1342 (Fed. Cir. 2020) ....................................................................... 4

*Royal Brush Mfg. v. United States*,
    75 F.4th 1250 (Fed. Cir. 2023) ....................................................................... 4

*Sierra Club v. Morton*,
    405 U.S. 727 (1972) ....................................................................................... 11

*Solar Energy Indus. Ass'n v. United States*,
    553 F. Supp. 3d 1322 (Ct. Int'l Trade 2021) ............................................... 10

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ................................................................................. 10, 11

*ThyssenKrupp Acciai Speciali Terni S.P.A. v. United States*,
    572 F. Supp. 2d 1323 (Ct. Int'l Trade 2008) ............................................... 15

*Trusted Integration, Inc. v. United States*,
    659 F.3d 1159 (Fed. Cir. 2011) ....................................................................... 6

*Vill. Of Arlington Heights v. Metro. Hous. Dev. Corp.*,
    429 U.S. 252 (1977) ....................................................................................... 13

**Statutes**

19 U.S.C. § 1307 ..................................................................................................... passim

28 U.S.C. § 1581 ............................................................................................................ 1, 8

28 U.S.C. § 2401 .............................................................................................................. 16

28 U.S.C. § 2636 ................................................................................................... 15, 17, 18

5 U.S.C. § 702 ..................................................................................................................... 8

**Other Authorities**

Hoshine Silicon Industry Co. Ltd Withhold Release Order Frequently Asked Questions,
    https://www.cbp.gov/trade/programs-administration/forced-labor/hoshine-silicon-industry-co-
    ltd-withhold-release-order-frequently-asked-question (last accessed on October 11, 2024) ..... 5

U.S. Customs and Border Protection, *Forced Labor*,
    https://www.cbp.gov/trade/forced-labor (last accessed October 15, 2024) ................................... 9

U.S. Customs and Border Protection, *The Department of Homeland Security Issues Withhold
    Release Order on Silica-Based Products Made by Forced Labor in Xinjiang*, (June 24, 2021),
    https://www.cbp.gov/newsroom/national-media-release/department-homeland-security-issues-
    withhold-release-order-silica .................................................................................................... 12

**Rules**

USCIT Rule 12(b)(1) ......................................................................................................... 7

**Regulations**

19 C.F.R. § 12.42 .............................................................................................................. 2

19 C.F.R. § 12.43 ........................................................................................................... 2, 4

19 C.F.R. § 12.44 .............................................................................................................. 2

I.    **INTRODUCTION**

Plaintiff Hoshine Silicon (Jia Xing) Industry Co., Ltd. ("Jiaxing Hoshine") respectfully opposes the Defendants' Motion to Dismiss (ECF 28) ("MTD").  As set forth below, Jiaxing Hoshine unquestionably possesses both statutory and constitutional standing to challenge the withhold release order ("WRO") issued by U.S. Customs and Border Protection ("CBP") with respect to Hoshine Silicon Industry Co., Ltd. and its subsidiaries (the "Hoshine WRO"), as well as CBP's rejection of Jiaxing Hoshine's application for modification of the same.  Jiaxing Hoshine's claims with respect to the WRO (Count 1 of Plaintiffs' Complaint) are also timely and properly brought under the Administrative Procedure Act ("APA").[1]

The Government's motion to dismiss is particularly ironic given that it was *CBP* that dictated the administrative pathway that Jiaxing Hoshine followed here.  Specifically, the Government advised Jiaxing Hoshine that the way to remove itself from the WRO was to file an administrative request with the agency, which Jiaxing Hoshine then did.  Now, the Government argues that Jiaxing Hoshine should have pursued a different administrative pathway—and done so on a different timeline.  That type of gamesmanship should not be countenanced.  Regulated entities should be permitted to rely upon the pathways spelled out by their regulators for pursuing a challenge.

---

1    The Court of International Trade has exclusive jurisdiction over claims arising out of any laws providing for embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety.  28 U.S.C. § 1581(i)(1)(c).  This includes any claims that arise out of Section 307 of the Tariff Act.  19 U.S.C. § 1307; *see also Int'l Labor Rights Fund v. Bush*, 357 F. Supp. 2d 204, 208 (D.D.C. 2004); *Ninestar Corp. v. United States*, 687 F. Supp. 3d 1308, 1322 (Ct. Int'l Trade 2024).

## II.    BACKGROUND

Section 307 of the Tariff Act of 1930 prohibits the importation and entry of (i.e., embargoes) articles produced in any foreign country by means of forced or indentured labor.  19 U.S.C. § 1307.  Pursuant to regulations issued under this authority, CBP has granted itself the power to detain any goods where "available information reasonably but not conclusively indicates that merchandise within the purview of section 307 is being, or is likely to be, imported."  *See* 19 C.F.R. § 12.42(e).  In such circumstances, CBP may issue a WRO instructing port officials to detain such merchandise.  A WRO is a draconian remedy in service of the Section 307 embargo authority: it disrupts the normal Customs entry and clearance process and creates significant commercial risk and uncertainty to both exporters and importers of the articles in question.  As is true in this case for Jiaxing Hoshine, exporters subject to a WRO face catastrophic loss of customers and sales opportunities.

While CBP claims to afford affected parties an opportunity to seek administrative release of the detained goods by submitting evidence that they were not produced using forced labor, that process is not available here.  19 C.F.R. § 12.43, 12.44.  For shipments that have been detained under a WRO, importers may submit evidence demonstrating that the goods were not made with forced labor and thus are admissible into the United States.  *See generally id.* §§ 12.42(e), 12.43, 12.44.  However, this process is shipment-specific and—more importantly—only available to importers of shipments detained at the border; this process is not available to the exporters or foreign producers directly impacted.  Following the issuance of the Hoshine WRO, Jiaxing Hoshine lost all of its U.S. customers and has been unable to export its goods to the United States, rendering this import-based remedial process inaccessible to plaintiff.  Confidential Complaint ECF No. 17. ¶¶ 42-45 ("Compl.").  As a result, the only available pathway for Jiaxing Hoshine to

challenge the WRO's application was to seek a modification of the Hoshine WRO seeking exclusion of Jiaxing Hoshine from its scope.

On September 12, 2023, Jiaxing Hoshine filed a petition for modification of the Hoshine WRO with CBP's Forced Labor Division ("FLD").  Compl. ¶ 39.  In its Petition Jiaxing Hoshine requested CBP modify the Hoshine WRO to exclude a specific and narrowly defined Jiaxing Hoshine supply chain from CBP's application and enforcement of the Hoshine WRO.  That filing followed several telephonic meetings held between Jiaxing Hoshine's counsel and FLD staff over a period of over twelve months in which Jiaxing Hoshine reviewed the background of the company and provided a detailed description of the supply chain at issue and the intended scope and intent of the Petition.  Compl. ¶¶ 36-38.  FLD officials participating in these meetings understood and encouraged Jiaxing Hoshine to make this filing.  Comprising thousands of pages, the Petition included, among many other things, extensive documentation of Jiaxing Hoshine and its affiliates, the production and distribution supply chain, documentation confirming that the supply chain at issue operates completely outside of Xinjiang Province, the existence of extensive and effective anti-forced labor policies and procedures, and the positive results of an independent third party labor audit.  *Id.* ¶ 39.

On November 3, 2023, CBP summarily denied the Modification Petition.  Compl. at Exh. 2 (Letter from CBP Forced Labor Division to Hogan Lovells US LLP (Nov. 3, 2023) (the "Denial Letter")).  The Denial Letter asserts simply that "modification of a WRO for only one specific supply chain would undermine the general principle upon which CBP bases its forced labor enforcement efforts, which is that companies subject to a WRO are to demonstrate full remediation of all forced labor indicators present at all of company locations subject to the WRO."  *Id*.  CBP further asserted that "{i}f Jiaxing Hoshine's position is that its supply chain is not subject to the scope of the WRO, then Jiaxing Hoshine may coordinate with importers of its products to demonstrate that

a particular shipment is admissible at the time of entry, either by showing that the shipment is not subject to the Hoshine WRO or that it was not produced, wholly or in part, with forced labor, pursuant to 19 C.F.R. § 12.43(a)." *Id.*

CBP's actions, as described above and in the Complaint, have caused severe harm to Jiaxing Hoshine. Significantly, "{s}ince Hoshine's WRO designation, Hoshine [

]." *See* Compl. Exhibit 1. As a practical matter, a detention under Section 307 acts as an embargo to importation of the goods, and the mere issuance of a WRO marks a foreign producer as a violator of international labor standards. The WRO designates goods as subject to automatic detention and seizure, rendering the goods unmerchantable in the United States. That is indeed what has happened here. The one-two punch of the WRO and the agency's refusal to modify the same has caused Jiaxing Hoshine severe commercial damage, has destroyed the merchantability of Jiaxing Hoshine's goods in the United States (and elsewhere) and has directly led to severe loss of sales and business opportunities, production, and employment.

"One 'relatively immutable' principle of due process is that 'where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the {g}overnment's case must be disclosed to the individual so that he has an opportunity to show that it is untrue.' . . . This immutable principle applies to cases where facts have been withheld from an entity during an administrative proceeding." *Royal Brush Mfg. v. United States*, 75 F.4th 1250, 1257 (Fed. Cir. 2023)(citing *Greene v. McElroy*, 360 U.S. 474, 496 (1959)). *See also Ramirez v. Dep't of Homeland Sec.*, 975 F.3d 1342, 1349–53 (Fed. Cir. 2020); *Doty v. United States*, 53 F.3d 1244, 1251 (Fed. Cir. 1995) ("The agency's ... withholding of the evidence on which {it} purported to rely ... w{as} ... egregiously removed from the fairness required of an agency in its administrative responsibilities ...."). Given the severe damage that is caused by a Forced Labor designation under Section 307, one would expect the Government to

wield its power cautiously and on the basis of reliable evidence.  Similarly, in order to afford producers and importers a fair opportunity to address such designations, one would expect the Government to disclose the specific evidence on which the agency has relied in issuing the order.

The Government has done neither here.  Instead, CBP publicly announced its action while offering nothing more than a conclusory accusation that the Hoshine Group (apparently including every member of the Group) engaged in "intimidation and threats" and "restriction of movement." *See* Hoshine Silicon Industry Co. Ltd Withhold Release Order Frequently Asked Questions, https://www.cbp.gov/trade/programs-administration/forced-labor/hoshine-silicon-industry-co-ltd-withhold-release-order-frequently-asked-question (last accessed on October 11, 2024). Compl. ¶ 32.  This is the *sum total* of what is publicly known concerning the purported evidentiary basis for CBP's actions.  Compl. ¶¶ 3-5.  The agency's failure to be more forthcoming renders it impossible for Jiaxing Hoshine to meaningfully address the agency's allegations.

In light of the foregoing, the relief sought by Jiaxing Hoshine through this action is both appropriate and closely tied to the purpose and objectives of Section 307.  Jiaxing Hoshine is asking this court to vacate the Hoshine Group WRO, at least as applicable to Jiaxing Hoshine, because the agency failed to provide adequate notice and reasoned explanations for its actions. Alternatively, Jiaxing Hoshine seeks an order from this Court requiring CBP to accept and consider Jiaxing Hoshine's petition for modification of the Hoshine WRO, which was rejected on grounds that have no basis in law.

## III.    ARGUMENT

Jiaxing Hoshine possesses both statutory and constitutional standing to bring its claims. Statutory standing is satisfied as Jiaxing Hoshine's interests are within the zone regulated by Section 307.  The zone of interests test does not require the plaintiff's interests to be consistent

with the statutory aim or purpose but only "arguably within the zone of interests to be protected *or regulated* by the statute." *Match–E–Be–Nash–She–Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 224 (2012) (emphasis added). Here, there is no question that the statute directly (indeed, in this case harshly and unfairly) "regulates" interests held by foreign producers and exporters that are targeted for detentions and/or exclusions. As such, Jiaxing Hoshine falls squarely within the zone of interests "regulated by the statute."

Jiaxing Hoshine also unquestionably has constitutional standing because it has suffered concrete and particularized economic, reputational, and procedural harms directly traceable to CBP's actions in issuing and enforcing the embargo created by the Hoshine WRO. This injury is redressable by a favorable court decision vacating the Hoshine WRO or requiring CBP to accept and consider Jiaxing Hoshine's petition for modification of the Hoshine WRO.

Finally, Count One of the Complaint is timely because the cause of action accrued at the earliest when CBP denied the WRO modification request, not when the original WRO was issued. Additionally, the continuing violations doctrine applies due to the ongoing nature of the WRO's enforcement, allowing the claim to be brought within two years of the most recent violation. The plaintiff also pursued administrative remedies in good faith, justifying the application of equitable tolling to extend the statutory period.

### A.      Standard of Review

The plaintiff bears the burden of establishing subject-matter jurisdiction, *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011), but this Court must assume the facts alleged in the complaint relevant to the jurisdictional inquiry to be true. *Pixton v. B & B Plastics, Inc.*, 291 F.3d 1324, 1326 (Fed. Cir. 2002). This Court must also draw all reasonable inferences in the plaintiff's favor. *Anaheim Gardens v. United States*, 444 F.3d 1309, 1314-15

(Fed. Cir. 2006).  This Court needs only to find that a "preponderance of the evidence" supports a finding of jurisdiction.  *Canadian Wheat Bd. v. United States*, 580 F. Supp. 2d 1350, 1356 (Ct. Int'l Trade 2008), *opinion clarified on denial of reconsideration*, 637 F. Supp. 2d 1329 (Ct. Int'l Trade 2009) and *judgment aff'd*, 641 F. 3d 1344 (Fed. Cir. 2011).  Moreover, in considering Rule 12(b)(1) motions, this Court must "limit its inquiry to the jurisdictional question, and avoid examining the merits of a case."  *Duferco Steel, Inc. v. United States*, 403 F. Supp. 2d 1281, 1284 (Ct. Int'l Trade 2005).

### B.    Plaintiff has Standing to Bring Its Claims

The Government asserts that Jiaxing Hoshine lacks statutory and constitutional standing to maintain its claims.  Neither claim has merit.

### 1.    Plaintiff Has Statutory Standing

First, the Government contends that Jiaxing Hoshine lacks statutory standing to bring a claim under Section 307 because, as a foreign manufacturer, it does not fall within the statute's "zone of interests," which the Government argues is limited to protecting domestic producers and workers.  This argument misinterprets both the zone of interests test and the scope of Section 307.

As a preliminary matter, the zone of interests test does not require that plaintiff's interests be consistent with the statutory aim or purpose but only "arguably within the zone of interests to be protected *or regulated* by the statute."  *Match–E–Be–Nash–She–Wish* 567 U.S. at 224 (emphasis added).  Here, there is no question that the statute directly (indeed, in this case harshly and unfairly) "regulates" interests held by foreign producers and exporters that are targeted for detentions and/or exclusions by imposing a *de facto* embargo.  In a pending appeal challenging a similar forced labor designation under Section 307, this Court recently held that the CIT has exclusive jurisdiction over a claim brought by affected foreign producers and exporters.  The Court

found that such jurisdiction exists under 28 U.S.C § 1581(i) because the forced labor import prohibition acts as an embargo. *Ninestar Corp. V. United States*, 666 F. Supp. 3d 1351, 1363 (Ct. Int'l Trade 2024) ("Because the UFLPA is a 'law … providing for … embargoes,' … the CIT has exclusive jurisdiction over challenges to agency action implementing the UFLPA under 28 U.S.C. § 1581(i)(1)(C)-(D)."). Similarly, Jiaxing Hoshine interests in this action fall squarely within the zone of interests "regulated by the statute."

Further, under the APA, any person "adversely affected or aggrieved by agency action within the meaning of a relevant statute" has standing. 5 U.S.C. § 702. The Supreme Court in *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 130 (2014), clarified that the zone-of-interests test is not meant to be especially demanding and should only preclude suits that are "marginally related to or inconsistent with the purposes implicit in the statute." The APA broadly encompasses challenges where procedural rights are infringed, especially in cases with facts and claims like those presented by Jiaxing Hoshine, in which the CBP's actions directly affect its ability to conduct business fairly. The Supreme Court has stated that it is unusual for a party to be denied judicial review, particularly when they have followed the required administrative procedures. In *Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 670 (1986), the Court affirmed that there is a "strong presumption that Congress intends judicial review of administrative action." This presumption is rooted in the belief that parties should have access to the courts to challenge agency decisions. Given that Jiaxing Hoshine adhered to CBP's instructions and sought administrative review before escalating the matter, it would be particularly unjust to deny judicial review in this case.

In any event, the Government is simply wrong to suggest that Jiaxing Hoshine's interests do not align with the statutory purpose. To the contrary, Jiaxing Hoshine's efforts to prevent the

exclusion of its goods align with the statutory objectives of Section 307 to ensure lawful trade and compliance with U.S. import regulations, including addressing forced labor concerns. Foreign manufacturers have a direct interest in demonstrating compliance with these standards to maintain access to U.S. markets. Denying standing to foreign manufacturers affected by agency actions taken under Section 307 would undermine the enforcement of Section 307 by allowing CBP actions to go unchecked, even when such actions may not align with the statutory purpose of fair and regulated trade.

Defendant next argues that, unlike the antidumping and countervailing duty statutes, Section 307 provides no explicit appeals remedy for foreign manufacturers. However, this comparison is flawed because the regulatory frameworks serve different purposes. The absence of explicit statutory remedies in Section 307 does not imply an exclusion from judicial review, especially where the foreign manufacturer's compliance with U.S. laws is concerned. The availability of an administrative process for modification or revocation of WRO, while not statutorily mandated, demonstrates CBP's recognition of the interests of foreign manufacturers in ensuring their goods are not wrongfully detained.

The enforcement mechanisms of Section 307 do not expressly preclude foreign entities from challenging erroneous actions that impede lawful trade. Congress passed the law to regulate forced labor and ensure fair trade practices and "CBP's forced labor enforcement mission supports ethical and humane trade while leveling the playing field for U.S. companies that respect fair labor standards."[2] Such goal from Congress and CBP is furthered, not frustrated, by allowing foreign manufacturers to demonstrate compliance and challenge CBP actions that potentially exceed statutory authority. Such challenges align with the broader APA principles allowing judicial

---

[2]    U.S. Customs and Border Protection, *Forced Labor*, https://www.cbp.gov/trade/forced-labor (last accessed October 15, 2024).

review of agency actions that are arbitrary, capricious, or otherwise not in accordance with law. *Solar Energy Indus. Ass'n v. United States*, 553 F. Supp. 3d 1322, 1330 (Ct. Int'l Trade 2021) ("The court may review … insofar as it gives rise to a controversy involving international trade and foreign affairs, for a clear misconstruction of the governing statute, a significant procedural violation, or action outside delegated authority.")

For the foregoing reasons, the Court should reject defendant's argument that Jiaxing Hoshine lacks statutory standing and deny the motion to dismiss on this ground.

### 2.    Plaintiff has Constitutional Standing

The Government next argues that Jiaxing Hoshine "cannot demonstrate constitutional standing to maintain this action." MTD at 16. This argument fails out of the gate. To establish Article III standing, the plaintiff must have suffered an injury-in-fact, "fairly . . . traceable to the challenged action of the defendant," which is "likely" to be "redressed by a favorable decision" from the court. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). All three of the *Lujan* requirements are met here.

### a)    Jiaxing Hoshine Satisfies the Injury-in-Fact Requirement

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (citing *Lujan*, 504 U.S. at 560). "{T}he injury-in-fact requirement... ensure{s} that the plaintiffs have a stake in the fight and will therefore diligently prosecute the case while, at the same time, ensuring that the claim is not abstract or conjectural so that resolution by the judiciary is both manageable and proper." *Canadian Lumber Trade Ass'n v. United States*, 517 F.3d 1319, 1332-33 (Fed. Cir. 2008) (citations and quotations omitted).

**NONCONFIDENTIAL VERSION**
**CONFIDENTIAL INFORMATION DELETED FROM BRACKETS**

The constitutional standing requirement of "{i}njury-in-fact is not Mount Everest." *Id.* at 1333 (internal citation omitted). "While a bare procedural violation alone may be insufficient to confer standing where the violation does not result in harm to the plaintiff, it is sufficient where that procedural harm results in other concrete harms." *See Invenergy Renewables LLC v. United States*, 422 F. Supp. 3d 1255, 1272 (Ct. Int'l Trade 2019), modified on other grounds, 476 F. Supp. 3d 1323 (Ct. Int'l Trade 2020) (citing *Spokeo*, 578 U.S. at 341). Furthermore, as the Federal Circuit recognized in *Gilda Industries, Inc. v. United States*, 446 F.3d 1271, 1279 (Fed. Cir. 2006), lack of procedure can constitute sufficient injury even where there exists the possibility that the agency's final decision taken in accordance with the proper procedures may not be in plaintiff's favor. *Id.* ("{T}he failure to conduct review and revision of the list injured Gilda by depriving it of at least an opportunity to have those products removed. That is a sufficient injury to be cognizable under the test for Article III standing.") (citations omitted).

Jiaxing Hoshine has adequately alleged concrete and particularized economic, business, reputational, and procedural harms. The Government's argument that "Jiaxing Hoshine has not alleged any monetary loss," MTD at 17-18, is plainly wrong. As set forth in Exhibit 1 to Jiaxing Hoshine's Complaint, [

]. *See* Compl. Exhibit 1 (emphasis added). Moreover, the Government's contention that "Jiaxing Hoshine has not quantified its loss by any measure" and therefore, "it has failed to establish that it has standing based on an economic injury-in-fact" is at odds with well-settled precedent. MTD at 17. *See e.g.*, *Canadian Lumber Trade Ass'n*, 517 F.3d at 1334 (finding that the plaintiff had Article III standing because it was "likely" to suffer "economic injury"); *see also Sierra Club v. Morton*, 405 U.S. 727, 738 (1972) ("{I}njuries other than economic harm are sufficient … to provide the basis for judicial review"). Thus, to the extent

the Government argues that economic injury may only be shown through *quantifiable* economic loss, its argument is not supported by the law.

Jiaxing Hoshine also has sufficiently alleged economic and reputational harms to its business as a result of Defendants' WRO Listing Decision and denial of WRO Modification Petition. Specifically, in its Complaint, Jiaxing Hoshine explained that CBP's actions have "adversely impacted Jiaxing Hoshine's ability to sell and ship goods directly and indirectly to {its} US-based customers" and that [

]. *See* Compl., ¶ 47and Exhibit 1. It is self-evident that a foreign company that routinely sells products to the United States will be financially harmed by an embargo on those products. *See e.g.*, *Canadian Lumber Trade Ass'n*, 517 F.3d at 1333; *Invenergy*, 422 F. Supp. 3d. at 1273-74. This is pure "economic logic" of the type that has been previously found sufficient to show economic harms establishing a plaintiff's standing to sue. *Id.*

Jiaxing Hoshine, however, does not rely on economic logic alone. Jiaxing Hoshine also alleged concrete economic harms and reputational harms to its business in its Complaint. Specifically, the CBP's WRO Listing Decision was publicly announced in a June 24, 2021 press release,[3] and following this public announcement, [

]. Compl., ¶ 43 and Exhibit 1. Jiaxing Hoshine has standing to bring this suit because it has a personal economic stake in the outcome. *See Invenergy*, 422 F. Supp. 3d. at 1273-74.

---

[3]    U.S. Customs and Border Protection, *The Department of Homeland Security Issues Withhold Release Order on Silica-Based Products Made by Forced Labor in Xinjiang*, (June 24, 2021), https://www.cbp.gov/newsroom/national-media-release/department-homeland-security-issues-withhold-release-order-silica (last accessed Sept. 18, 2024).

Furthermore, Jiaxing Hoshine has also suffered procedural harm—CBP's failure to provide adequate notice or explanation for the WRO Listing Decision and its subsequent refusal to consider the substance of Plaintiff's WRO Modification Petition.  This procedural harm separately supports the conclusion that Jiaxing Hoshine has established its standing to challenge the WRO Listing Decision and denial of the WRO Modification Petition.  *Gilda*, 446 F.3d at 1279 (deprivation of opportunity for agency to exercise discretionary review is sufficient injury to satisfy Article III standing).  The Government completely ignores this procedural harm in its motion to dismiss.

  **b)**  **Jiaxing Hoshine's Injury is Fairly Traceable to CBP's Action and Redressable by a Favorable Court Decision**

To support standing, the identified injury must be "fairly traceable" to the defendant's actions and likely to be redressed by a favorable court decision.  *Lujan*, 504 U.S. at 590.  Jiaxing Hoshine readily satisfies these tests.  Both of these prongs can be established even if the injury is indirect.  *Natural Resources Defense Council, Inc. v. Ross*, 331 F.Supp.3d 1338, 1357 (Ct. Int'l Trade 2018) (citing *Vill. Of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 2661 (1977); *Lujan*, 504 U.S. at 561-62,).  That actions of third parties may redress part of the alleged injury is not a conclusive bar to standing.  In *NRDC*, the CIT found redressability where "{p}laintiffs ... show{ed} that the third parties in question {were} likely to respond to a United States import ban in a way that reduces danger ...."  *Id*. at 1359.

The Government's argument that "other economic and market considerations may account fully for the decisions" of Jiaxing Hoshine's customers to cancel orders is meritless.  MTD at 18-19.  Jiaxing Hoshine's situation is analogous to the plaintiff in *Invenergy,* where the CIT concluded that Invenergy's injury stemmed directly from the government's action, "even if some of the specific harms it allege{d} involved relationships with third parties."  *Invenergy*, 422 F. Supp. 3d  at 1274.  Here, Jiaxing Hoshine's injuries would not exist but for the Defendants'

actions. Specifically, but for the WRO Listing Decision and denial of the WRO Modification Petition, Jiaxing Hoshine could export products its customers in the United States. Thus, Jiaxing Hoshine's injury is fairly traceable to the Defendants' actions, even if some of the specific harms suffered by the Plaintiff involve third parties.

In *Invenergy*, the CIT also found that plaintiff's procedural injury was directly traceable to defendants where the government action was announced without sufficient notice or opportunity to comment "as required by the APA." *Id.* at 1275. So too here. Jiaxing Hoshine's procedural injury is directly traceable to the Government's failure to provide adequate notice and reasoned explanations with respect to the WRO Listing Decision and denial of the WRO Modification Petition. *See* Compl., ¶¶ 34-40. Such procedural injuries do not depend upon the actions of third parties. For all these reasons, Jiaxing Hoshine has adequately established that its injuries are traceable to the Defendants' actions.

The Government next argues that "{b}ecause Jiaxing Hoshine's alleged injury is not demonstrably traceable to the governmental action, it also cannot show that enjoining the WRO would cure its alleged harms – i.e., would result in the restoration of its allegedly lost business." MTD at 19. It is difficult to see how that is so. Ultimately, Jiaxing Hoshine asks this Court to vacate the CBP's WRO Listing Decision and determination to deny review of Plaintiff's WRO Modification Petition and declare that the Defendants violated the APA by failing to provide adequate notice and reasoned explanations for its actions. *See* Compl. at 16. If the WRO Listing Decision and denial of WRO Modification Petition are vacated, Plaintiff's customers are highly unlikely to cancel contracts with Jiaxing Hoshine, which they only did as a consequence of CBP's WRO Listing Decision and denial of the WRO Modification Petition. This again is simple "economic logic." *Canadian Lumber*, 517 F.3d at 1333.

- 14 -

Jiaxing Hoshine's procedural injury is also redressable by a decision from this court favorable to Jiaxing Hoshine because, if it succeeds on the merits, the court would order CBP to provide additional explanation regarding its WRO Listing Decision and determination to deny review of Jiaxing Hoshine's WRO Modification Petition. *See Lujan*, 504 U.S. at 561-62. This court has determined that the redressability prong can be met where a judicial decision would result in a remand or order to an agency to follow process rather than directing a specific outcome. *See, e.g., Gilda*, 446 F.3d at 1279 (deprivation of opportunity for agency to exercise discretionary review is sufficient injury to satisfy Article III standing); *ThyssenKrupp Acciai Speciali Terni S.P.A. v. United States,* 572 F. Supp. 2d 1323, 1331 (Ct. Int'l Trade 2008) ("Providing such an opportunity for review would sufficiently redress ThyssenKrupp's injury and satisfy Article III standing").

In sum, Jiaxing Hoshine has suffered and continues to be threatened with concrete and particularized procedural, economic, and business reputational harms that can be fairly traced to the WRO Listing Decision and denial of the WRO Modification Petition, and that can be redressed by a favorable decision from this Court. Accordingly, Jiaxing Hoshine has Article III standing and its claims are properly before this Court.

### C.    Count One of the Complaint Was Timely Asserted

Finally, the Government argues that Count One of the Complaint concerning the WRO Listing Decision should be dismissed as untimely, because the challenge to the Hoshine WRO was brought more than two years after it was issued, citing 28 U.S.C. § 2636(i). In fact, Jiaxing Hoshine's cause of action with respect to issuance of the Hoshine WRO accrued at the earliest when CBP foreclosed the alternative avenue for relief promised to it by categorically rejecting Jiaxing Hoshine's petition for an individualized modification of the WRO.

In September 2021, Jiaxing Hoshine's external counsel met with several CBP officials to communicate the company's willingness to cooperate with CBP's inquiries and asked CBP to lift the WRO. Compl. ¶ 36.  After this initial meeting, Jiaxing Hoshine engaged in months of discussion with CBP staff at the FLD before filing the WRO Modification Petition, in keeping with the pathway identified by CBP officials.  In those discussion CBP indicated repeatedly that implementing effective compliance measures (*e.g.*, adopting appropriate remediation policies and procedures and hiring a third party auditor to confirm successful implementation of that remediation) could lead to the removal of the Jiaxing Hoshine supply chain from the scope of the Hoshine Group WRO.  Compl. ¶¶ 5-7.  Those discussions were clear and explicit that the modification was being sought solely with respect to the specific Jiaxing Hoshine supply chain.

Only when the agency unexpectedly reversed course and rejected the Modification Petition, ostensibly because it did not include evidence of remediation for *all* Hoshine Group companies, did it become clear that the agency was taking the position that all Hoshine Group companies must rise or fall together.  At that point, Jiaxing Hoshine's only avenue for relief, according to CBP, was to challenge the Hoshine Group WRO listing in its entirety.  Compl. ¶ 9 and Exhibit 2.

Jiaxing had no reason – and no cause of action – to challenge the Hoshine Group listing decision itself until the Modification Petition was rejected on those particular grounds.  Jiaxing's statute of limitations on count one thus did not begin to run until that date.  In *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 144 S. Ct. 2440 (2024),  the Supreme Court clarified that the statute of limitations under 28 U.S.C. § 2401(a) for APA claims does not start until the plaintiff is concretely "injured by a final agency action."  *Id.* at 2443.  As applied here, Jiaxing Hoshine's injury did not become manifest until the agency's final, conclusive denial of the Modification

Petition.  Prior to this definitive action, Jiaxing Hoshine had a reasonable expectation that the WRO might be modified—in fact, had CBP acted in a manner consistent with the numerous discussions between the parties, there would have been no need for this litigation.

Alternatively, defendant's timeliness argument ignores the continuing violations doctrine, which applies when the wrongful conduct is ongoing and results in a series of repeated injuries. The Hoshine WRO is an ongoing agency action, with its enforcement causing injury to plaintiff's economic interests—each and every day in which the Hoshine WRO remains in force as to Jiaxing Hoshine constitutes a new violation that re-triggers the statute of limitations.  Courts have repeatedly recognized that when an agency action continues to affect a plaintiff adversely, the cause of action can accrue each time the action is enforced or re-applied, allowing for timely challenges within two years of the most recent enforcement action.  *Havens Realty Corp. v. Coleman,* 455 U.S. 363(1982).  Where government actions result in continuous or repeated violations of the plaintiff's rights, the plaintiff is entitled to bring a timely challenge each time the action is enforced.  *Id*. at 380-81 ("Where the challenged violation is a continuing one … where a plaintiff … challenges … an unlawful practice that continues into the limitation period, the complaint it timely when it is filed within 180 days of the last asserted occurrence of that practice.").

Finally, the statute of limitations under 28 U.S.C. § 2636(i) is subject to the equitable tolling doctrine, which allows courts to pause or extend statutes of limitations when plaintiffs have diligently pursued their rights and were unable to meet filing deadlines due to extraordinary circumstances. *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96 (1990) ("Federal courts have typically extended equitable relief … where the claimant has actively pursued his judicial remedies …").  As noted above, Hoshine Jiaxing was engaged in active discussions and

negotiations with CBP in an effort to resolve the WRO issues administratively and, in fact, sought the relief prescribed by CBP through the filing of the Modification Petition. Compl. ¶¶ 36-39. Those efforts justify tolling the statute of limitations period. Plaintiff's good faith efforts to resolve the matter through administrative channels should not be penalized by dismissing the claim on timeliness grounds.

Lastly, equitable tolling should apply in this case because the plaintiff's understanding of its injury was delayed by the agency's lack of transparency and misleading conduct. Courts have consistently applied equitable tolling when an agency's behavior prevents a party from timely filing a claim. For example, in *Irwin*, the Supreme Court recognized that equitable tolling applies where a plaintiff "has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass". *Irwin*, 498 U.S. at 96  Here, the agency induced Jiaxing Hoshine to pursue resolution of its concerns through corrective measures and the filing of the supply chain-specific Modification Petition. Thus CBP's actions caused Jiaxing Hoshine to delay filing its lawsuit—indeed, if plaintiff had filed in this Court prior to the agency's final decision as to the Modification Petition, such litigation arguably would not have been ripe for judicial review.

For all these reasons, the challenge to the Hoshine WRO is timely or should be accepted as timely under principles of equitable tolling. The statute of limitations under 28 U.S.C. § 2636(i) should be calculated from the date when the Modification Petition was rejected by CBP, not from the date of the WRO's issuance. CBP's rejection of the Modification Petition occurred within the relevant two-year window. Plaintiff's claims thus fall within the statutory timeframe, and Count One of the complaint should not be dismissed as untimely.

**IV.    CONCLUSION**

For the foregoing reasons, plaintiff respectfully requests that the Court deny defendant's Motion to Dismiss in its entirety.  Jiaxing Hoshine has demonstrated sufficient standing and a timely basis for its claims, warranting judicial review of CBP's actions.

Respectfully submitted,

/s/ Craig A. Lewis
Craig A. Lewis
Jonathan T. Stoel
Lindsay K. Brown
Kelly Zhang

HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, DC 20004-1109
(202) 637-8613

*Counsel for Plaintiff*

Date: October 18, 2024