

1300 Pennsylvania Avenue, NW
Washington, DC 20229

**Hoshine Silicon Industry Co., Ltd and its Subsidiaries
Withhold Release Order Modification**

February 24, 2026

Hoshine Silicon (Jia Xing) Industry Co., Ltd.
c/o Craig A. Lewis
Hogan Lovells US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, DC 20004

Re: WRO Modification Petition – Hoshine Silicon (Jia Xing) Industry Co., Ltd. Final
       Remand Redetermination

Dear Mr. Lewis:

Pursuant to a remand order dated May 14, 2025, issued by the U.S. Court of International Trade
(the Court) in *Hoshine Silicon (Jia Xing) Industry Co., Ltd. v. United States et al.,* Court No. 24-
00048 (hereinafter, the Remand Order), U.S. Customs and Border Protection ("CBP"), Trade
Remedy Law Enforcement Directorate ("TRELD"), Forced Labor Division ("FLD")
reconsidered its November 3, 2023 decision denying the modification of the Hoshine Silicon
Industry Co. Ltd. Withhold Release Order (WRO) to exclude Hoshine Silicon (Jia Xing) Industry
Co., Ltd. ("Jiaxing Hoshine") from the scope of the WRO.

As part of the instant remand proceedings, on June 18, 2025, you submitted to FLD a renewed
WRO modification petition on behalf of your client, Jiaxing Hoshine. This petition included,
among other records, partial responses to a CBP questionnaire, dated May 30, 2025. An additional
response to CBP's questionnaire was submitted on July 16, 2025. CBP has now completed its
reconsideration of its November 3, 2023 determination, following review of Jiaxing Hoshine's
June 18, 2025, July 16, 2025, and December 13, 2025 submissions, CBP has determined that
Jiaxing Hoshine has not sufficiently demonstrated full and effective remediation of all forced labor
conditions in its operations and supply chain.

Hoshine Silicon (Jia Xing) Industry Co., Ltd.
Page 2


Should you have any questions, please do not hesitate to contact CBP FLD via email at
ForcedLabor@cbp.dhs.gov.

Sincerely,

Brian Hoxie, Director
Forced Labor Division
U.S. Customs and Border Protection

Enclosure

I. **Introduction**

On June 15, 2021, CBP issued a WRO pursuant to 19 U.S.C. § 1307 and 19 C.F.R. § 12.42(e) on silica-based products made by Hoshine Silicon, Jiaxing Hoshine's parent company, and its vertically integrated subsidiaries, as well as materials and goods (such as polysilicon) derived from or produced using those silica-based products.[1]  CBP based its decision to issue a WRO on evidence that reasonably but not conclusively demonstrates that forced labor was used, wholly or *in part*, in the production of those goods by Hoshine Silicon and its subsidiaries and that such goods were being, or likely to be, imported into the United States.[2]  As outlined in CBP's press release, the Hoshine WRO applies to:

1. Component Materials - silicon, including metallurgic grade silicon, silicon oxide, and certain silicone in primary forms;
2. Intermediate Goods - additives for aluminum alloys and concrete, integrated circuits, and semiconductor devices; and
3. Finished Goods - adhesives, electronics, lubricants, photovoltaic cells, solar generators, solar panels, and parts thereof.[3]

On September 12, 2023, Jiaxing Hoshine requested a modification of the Hoshine WRO, which CBP denied on November 3, 2023.[4]  On March 20, 2024, Jiaxing Hoshine sought judicial review of CBP's modification denial with the Court.[5]

On May 14, 2025, the United States filed a Consent Motion for Voluntary Remand and to

---

[1] *See* Withhold Release Order (WRO) Memorandum from Acting Exec. Comm'r, Off. Trade, to Exec. Assistant Comm'r, Off. Field Operations (OFO) (June 15, 2021) (Hoshine WRO).

[2] *See* Hoshine WRO; *see also* 19 C.F.R. 12.42(e).

[3] *See* Press Release, U.S. Customs and Border Protection, The Department of Homeland Security Issues Withhold Release Order on Silica-Based Products Made by Forced Labor in Xinjiang (June 24, 2021) https://www.cbp.gov/newsroom/national-media-release/department-homeland-security-issues-withhold-release-order-silica (last visited on Oct. 1, 2025) (Hoshine WRO Press Release).

[4] *See* Letter from Brian Hoxie, Dir., Off. Trade, Forced Lab. Div., U.S. Customs & Border Prot., to Jiaxing Hoshine (Nov. 3, 2023) (on file with U.S. Custom & Border Prot.); June 18, 2025 Questionnaire Resp. (a resubmission of Jiaxing Hoshine's September 12, 2023 Modification Petition).

[5] Jiaxing Hoshine Complaint, *Hoshine Silicon (Jia Xing) Industry Co., Ltd. v. United States et al.*, Court No. 24-00048 (Ct. Int'l Trade Feb. 20, 2024), ECF No. 17 (Jiaxing Hoshine Compl.).

Stay this Matter to "provide the agency the opportunity to reconsider its position and its decision, in light of a full airing of the parties' views on the modification request" and "[i]f necessary, the parties will be in a better position to evaluate the decision and the support for that decision."[6]

In moving for a remand, CBP indicated that it conferred with Jiaxing Hoshine and agreed on certain parameters for the remand listed below:

1.  CBP shall review the evidence provided by Jiaxing Hoshine in its original submission;
2.  Jiaxing Hoshine may submit additional information in support of its modification request;
3.  CBP may issue questions with respect to Jiaxing Hoshine's previous submissions and additional information, as applicable, and provide plaintiff with a reasonable period to respond, as requested; and
4.  CBP shall issue a new decision on Jiaxing Hoshine's request, considering all the evidence submitted.[7]

On May 14, 2025, the Court granted the U.S. government's Consent Motion for Voluntary Remand and ordered CBP's November 3, 2023 determination remanded to CBP for reconsideration.[8]  CBP issued a Draft Remand Determination on November 13, 2025.[9]  CBP received comments from Hoshine Silicon (Jia Xing) Industry Co., Ltd. (Jiaxing Hoshine).[10] CBP did not receive comments from any other parties.

---

[6] *See* Consent Motion at 6.

[7] *Id.* at 3.

[8] *See* Remand Order at 1.

[9] *See* U.S. Customs & Border Prot., *Draft Remand Redetermination, Hoshine Silicon (Jia Xing) Industry Co., Ltd. v. United States et al., Court No. 24-00048* (Nov. 13, 2025) (Draft Remand Redetermination) (on file with U.S. Customs & Border Prot.).

[10] *See* Jiaxing Hoshine's Comments.

## II.  Summary of Jiaxing Hoshine's Comments and CBP's Response

### A.  Forced Labor Conditions in Jiaxing Hoshine's Facilities, Operations, or Supply Chain

1. Jiaxing Hoshine's Comments

Jiaxing Hoshine contends that CBP failed to provide any specific, verifiable evidence to support its claim that forced labor conditions exist within Jiaxing Hoshine's facilities, operations, or supply chain.[11]  The company argues that without such evidence, CBP's continued application of the Withhold Release Order (WRO) is arbitrary and capricious.[12]  Furthermore, Jiaxing Hoshine asserts that CBP's reliance on International Labour Organization (ILO) indicators, without directly linking Jiaxing Hoshine to the statutory definition of "forced labor," is legally insufficient.[13]

2. CBP's Response

CBP issued a WRO pursuant to 19 U.S.C. § 1307 and 19 C.F. R. § 12.42(e) on silica-based products, as well as any derivatives or goods produced by Hoshine and its subsidiaries.[14]  CBP based its decision to issue a WRO on evidence that reasonably but not conclusively demonstrates that Hoshine Silicon and its subsidiaries used forced labor, wholly or in part, in the production of those goods and that such goods were being, or are likely to be, imported into the United States.[15]  Specifically, this WRO was based on evidence reasonably indicating that

---

[11] *See* Jiaxing Hoshine's Comments at 3-4.

[12] *Id.*

[13] *See* Jiaxing Hoshine's Comments at 3-4; 19 U.S.C. § 1307.

[14] *See* Hoshine WRO; Hoshine WRO Press Release.

[15] *See* Hoshine WRO; Hoshine WRO Press Release.

Hoshine Silicon uses forced labor to manufacture silica-based products.[16]  CBP identified two of the International Labor Organization's indicators of forced labor in Hoshine Silicon's production process: intimidation and threats and restriction of movement.[17]  The WRO against Hoshine was issued as part of actions the United States took to address forced labor among the Uyghur ethnic minority in the Xinjiang Region.[18]  CBP notes that the statute of limitations has expired for Jiaxing Hoshine to challenge the WRO's initial issuance.[19]  CBP continues to determine that Hoshine Silicon and *all* its subsidiaries subject to it utilize forced labor in their production processes, including [[                                   ]], Jiaxing Hoshine's primary supplier of silicon metal.[20]

The Hoshine WRO remains in force unless CBP modifies it.[21]  A modification is a determination by CBP that the foreign entity subject to the WRO has fully and effectively remediated forced labor.[22]  Entities subject to a WRO may file a petition to request modification of the WRO and demonstrate to CBP that they have remediated all forced labor conditions in their facilities, supply chain, or both.[23]  Effective remediation means that a company has taken steps to identify, correct, and prevent conditions of forced labor.[24]  Contrary to Jiaxing Hoshine's assertion above, CBP does not bear the burden to disprove remediation; the burden to show full

---

[16] *See* Hoshine WRO; Hoshine WRO Press Release.

[17] *See* Hoshine WRO; Hoshine WRO Press Release.

[18] *See* Hoshine WRO Press Release.

[19] *See* Order Granting in Part and Denying in Part Defendant's Motion to Dismiss at 17–20.

[20] *See* Draft Remand Redetermination.

[21] *See* Custom & Border Prot., *Office of Trade Forced Labor Division Withhold Release Order (WRO) and Finding Modifications Guide*, CBP Pub. No. 5040-0525 (May 2025) (Modification Guidance) (on file with U.S. Customs & Border Prot.).

[22] *See id.*

[23] *See id.*

[24] *See id.*

and effective remediation rests with the party subject to the WRO.[25]  After considering the evidence on the record and the arguments raised by Jiaxing Hoshine, CBP continues to find that Jiaxing Hoshine has not sufficiently demonstrated that it remediated forced labor conditions in its facilities and supply chain.[26]  Jiaxing Hoshine has not provided sufficient evidence, beyond a statement from the supplier, to confirm that [[                    ]] produces its products wholly or *in part*, free from forced labor.[27]  The evidence Jiaxing Hoshine presents related to its supply chain illustrates, at most, that Jiaxing Hoshine purchases raw materials from a sister entity that remains subject to a WRO.[28]  CBP has not modified the Hoshine WRO against [[ ]], nor has [[                    ]] requested or presented sufficient evidence of modification.[29]  Jiaxing Hoshine provided evidence spanning only two months to support its claim that its supply chain is clear of forced labor.[30]  In addition to the short period of evidence provided by Jiaxing Hoshine, Jiaxing Hoshine provided insufficient information and visibility into [[                    ]]'s operations and supply chain.[31]  Consequently, CBP continues to determine that Jiaxing Hoshine has not provided sufficient evidence about its supply chain to show remediation.[32]  The record evidence clearly demonstrates that Jiaxing Hoshine's supply

---

[25] *See id.*

[26] *See* Draft Remand Redetermination; June 18, 2025 Questionnaire Resp.; *see also* July 16, 2025 Questionnaire Resp.

[27] *See* Letter from Jiaxing Hoshine, to Eric Choy, Dir., Off. Trade, Forced Lab. Div., U.S. Customs & Border Prot. (June 16, 2025), Ex. 13.2.2 (on file with Custom & Border Prot.) (June 18, 2025 Questionnaire Resp.) (a resubmission of Jiaxing Hoshine's September 12, 2023 Modification Petition).

[28] *See* June 18, 2025 Questionnaire Resp.; Letter from Jiaxing Hoshine, to Trisha Tran, Branch Chief, Enf't & Compliance, Forced Lab. Div., (July 16, 2025) (on file with U.S. Customs & Border Prot.) (July 16, 2025 Questionnaire Resp.).

[29] *See* Hoshine WRO; Hoshine WRO Press Release; *see also* June 18, 2025 Questionnaire Resp.; July 16, 2025 Questionnaire Resp.

[30] *See* June 18, 2025 Questionnaire Resp., Ex. 7.

[31] *See id.* Ex.'s 5-7, 13; *see also* July 16, 2025 Questionnaire Resp., Ex. A-2.

[32] *See* June 18, 2025 Questionnaire Resp., Ex.'s 5-7, 13; *see also* July 16, 2025 Questionnaire Resp., Ex. A-2.

chain is intertwined with Hoshine Silicon's subsidiaries.[33]  For example, all silicon metal supply

chain trace materials provided by Jiaxing Hoshine come directly from [[

]].[34]  Thus, CBP continues to determine that Jiaxing Hoshine has failed to meet its burden to

illustrate that it has *fully* and effectively remediated forced labor in its production process.[35]

### B. Jiaxing Hoshine's Audits

Jiaxing Hoshine asserts that CBP's findings are unsupported by the record and contain

material misstatements of fact, requiring correction and reassessment of underlying factual

information before it releases the remand redetermination.[36]  The company highlights that it

contracted with [[        ]] for a Sedex Members Ethical Trade Audit (SMETA), which, despite its

broader focus, followed Sedex's *Guidance on Operational Practice & Indicators of Forced

Labour* and found no indications of the factory's involvement in the eleven ILO forced labor

indicators.[37]  Additionally, Jiaxing Hoshine engaged [[        ]] to conduct a specialized audit

focused on forced labor analysis, which also confirmed the absence of all eleven ILO forced

labor indicators.[38]

---

[33] *See* June 18, 2025 Questionnaire Resp., Ex.'s 7, 13.

[34] *See id.*, Ex. 7.

[35] *See id.*

[36] *See* Jiaxing Hoshine's Comments at 5-9.

[37] *See id.*

[38] *See id.*

### 1. [[   ]] SMETA

#### a.  Jiaxing Hoshine's Comment

Jiaxing Hoshine states that [[        ]] conducted a SMETA on July 29-30, 2024, covering human rights issues, including forced labor, and found no indicators of forced labor.[39]  CBP, however, discounts this audit because it was not unannounced, lacked "in-depth analysis" of forced labor or ILO indicators, and did not extend to sub-suppliers or raw material sources.[40] Jiaxing Hoshine counters that the audit met the criteria of CBP's own WRO Modification Guide.[41]  [[        ]] conducted the audit using certified social compliance auditors following Sedex's Guidance on Operational Practice & Indicators of Forced Labour, and its findings reflect genuine labor conditions.[42]  Jiaxing Hoshine argues that CBP's criticisms are unsubstantiated and unsupported by the record.[43]

#### b.  CBP's Response

When evaluating record evidence originating from China, CBP must consider longstanding concerns regarding the transparency, independence, and verifiability of information produced under conditions of significant state involvement.[44]  Multiple U.S. statutes and

---

[39] *See id.*

[40] *See id.*

[41] *See id.*

[42] *See id.*

[43] *See id.*

[44] *See, e.g.*, Uyghur Forced Labor Prevention Act, Pub. L. No. 117-78, § 2(d)(2)(B)(vii), 135 Stat. 1525, 1528 (2021) (directing agencies to address "the lack of reliable data, including data from the People's Republic of China"); U.S. Dep't of State, 2023 Country Reports on Human Rights Practices: China (Mar. 2024) (documenting systemic opacity and government control over labor-related information); *see also* July 16, 2025 Questionnaire Resp., Ex. C (in the exhibit Eurofins recognizes limitations to addressing forced labor in the China.  Eurofins stated, "In recognition of local sensitivities related to allegations of Forced Labor, the report did not specifically reference the consider of forced labor but rather considered performance related to the assertions comprising the eleven (11) International Labour Organization ("ILO") indicators of forced labor.").

government reports recognize that Chinese data may be incomplete, unverifiable, or subject to government influence, as China's political and regulatory environment limits the availability of reliable, independently generated information relevant to trade, labor, and supply chain conditions.[45]

Accordingly, CBP must carefully evaluate evidence for credibility, independence, and verifiability, particularly where that evidence originates from jurisdictions with limited transparency or where the government exerts substantial control over commercial and labor-related disclosures.[46]  In reviewing materials submitted on remand, CBP notes that several documents originating from China-based entities, such as supplier declarations, internal records, and self-certifications issued by the company, lack evidence of independent verification.[47]  Given the structural limitations associated with obtaining reliable data from China, such as the absence of independent auditing mechanisms, CBP assigns reduced evidentiary weight to these materials unless independently verifiable information corroborates them.[48]  This approach aligns with CBP's longstanding practice in cases involving jurisdictions where transparency concerns limit

---

[45] *See*, *e.g.*, Uyghur Forced Labor Prevention Act, Pub. L. No. 117-78, § 2(d)(2)(B)(vii), 135 Stat. 1525, 1528 (2021); U.S. Dep't of State, 2023 Country Reports on Human Rights Practices: China (Mar. 2024); July 16, 2025 Questionnaire Resp., Ex. C (in the exhibit Eurofins recognizes limitations to addressing forced labor in the China. Eurofins stated, "In recognition of local sensitivities related to allegations of Forced Labor, the report did not specifically reference the consider of forced labor but rather considered performance related to the assertions comprising the eleven (11) International Labour Organization ("ILO") indicators of forced labor.").

[46] *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951) (agencies must weigh evidence based on credibility and reliability); U.S. Int'l Trade Comm'n, Report to Congress on China's WTO Compliance (2023) (noting persistent issues with transparency and data integrity in Chinese regulatory systems).

[47] *See* June 18, 2025 Questionnaire Resp., Ex. 13; July 16, 2025 Questionnaire Resp.

[48] *See* U.S. Dep't of Labor, List of Goods Produced by Child Labor or Forced Labor (2024) (identifying China as a jurisdiction where independent verification of labor conditions is severely constrained); Congressional Executive Commission on China, Annual Report (2023) (describing systemic barriers to obtaining reliable information from Chinese based entities).; *see also* July 16, 2025 Questionnaire Resp., Ex. C (in the exhibit Eurofins recognizes limitations to addressing forced labor in the China.  Eurofins stated, "In recognition of local sensitivities related to allegations of Forced Labor, the report did not specifically reference the consider of forced labor but rather considered performance related to the assertions comprising the eleven (11) International Labour Organization ("ILO") indicators of forced labor.")

the reliability of self-reported data.[49]

For example, where an importer provides documentation that CBP cannot independently authenticate, or where CBP has concerns regarding the completeness and accuracy of the information or potential government influence on the information, CBP may give limited weight to these documents as it seeks to resolve factual questions central to its determination.[50] Considering these transparency constraints and data reliability concerns inherent to information from China, CBP evaluates certain submissions from parties requesting modification with scrutiny.[51] CBP accords diminished weight to evidence it cannot independently verify or that originates from sources operating under conditions of limited transparency.[52] By ensuring that evidence that CBP relies on is credible and verifiable, CBP's determinations are aligned with both administrative law principles and congressional findings regarding the reliability of China-origin data.[53]

While audits by reputable social compliance auditing firms may help to fill gaps in evidence or corroborate certain evidence, they too have their limits. Specifically, CBP's

---

[49] *See* 19 C.F.R. § 165.6 (illustrating CBP's general practice to unverifiable information); *Universal Camera Corp.*, 340 U.S. at 488.

[50] *See* 19 C.F.R. § 165.6; *Universal Camera Corp.*, 340 U.S. at 488.

[51] *See* 19 C.F.R. § 165.6; *Universal Camera Corp.*, 340 U.S. at 488.

[52] *See* U.S. Dep't of Labor, List of Goods Produced by Child Labor or Forced Labor (2024) (identifying China as a jurisdiction where independent verification of labor conditions is severely constrained); Congressional Executive Commission on China, Annual Report (2023) (describing systemic barriers to obtaining reliable information from Chinese based entities); *see also* July 16, 2025 Questionnaire Resp., Ex. C (in the exhibit Eurofins recognizes limitations to addressing forced labor in the China. Eurofins stated, "In recognition of local sensitivities related to allegations of Forced Labor, the report did not specifically reference the consider of forced labor but rather considered performance related to the assertions comprising the eleven (11) International Labour Organization ("ILO") indicators of forced labor.")

[53] *See id.*

guidance states that audits *should* be unannounced.[54]  Announced audits, such as the SMETA in

this case, raise concerns about whether their findings represent typical worksite conditions.[55]

However, CBP has never stated that it did not give weight to the audits. Rather, CBP treats social

audits as one piece of evidence that may demonstrate full and effective remediation, meaning

that it is a single piece of the totality of the administrative record.[56]  In this case, CBP has found

deficiencies in the SMETA.[57]  Specifically, the SMETA report does not provide detailed

explanations to support [[      ]] findings regarding the effectiveness of Jiaxing Hoshine's

grievance mechanism and internal controls.[58]  Additionally, to make an informed determination

as to the typical worksite conditions, CBP needs robust explanations from the auditors selected

by companies requesting modification to understand the actual working conditions of the

companies requesting a modification.[59]  The SMETA fails to provide robust explanations for its

findings.[60]

     CBP acknowledges that the SMETA of the direct manufacturing operations did use a

certified social compliance auditor.[61]  Nonetheless, CBP continues to find that the findings in the

SMETA report were unsubstantiated because they lacked specificity and detailed explanations.[62]

For example, the SMETA report found that Jiaxing Hoshine's supply chain management system

---

[54] *See* Modification Guidance at 2; *See Key Topic: What Is Social Auditing?*, Bureau Int'l Lab. Aff. (last visited Aug. 22, 2025), https://www.dol.gov/agencies/ilab/comply-chain/steps-to-a-social-compliance-system/step-5-monitor-compliance/key-topic-what-is-social-auditing.

[55] *See* Modification Guidance.

[56] *See id.*

[57] *See* Modification Guidance; July 16, 2025 Questionnaire Resp., Ex D-1-a.

[58] *See* Modification Guidance; July 16, 2025 Questionnaire Resp., Ex D-1-a.

[59] *See* Modification Guidance.

[60] *See* July 16, 2025 Questionnaire Resp., Ex. D-1-a.

[61] *See id.*, Ex. B-1.

[62] *See id.*

"was acceptable," even though Jiaxing Hoshine's supply chain management system failed to flag

[[                                ]] for removal as a high-risk supplier.[63]  As such, CBP continues to

determine that the SMETA report does not provide sufficient explanation  to allow CBP to

determine that Jiaxing Hoshine no longer uses forced labor in its production process.[64]  Jiaxing

Hoshine erroneously suggests that CBP should accept determinations made by auditors without

those auditors supplying the reasoning behind their determinations.[65]  Despite Jiaxing Hoshine's

insistence to the contrary, the information presented within the SMETA report does little to

further CBP's goal of understanding worksite conditions at Jiaxing Hoshine's facilities because

the SMETA report does not explain its findings.[66]  It is also worth highlighting that Jiaxing

Hoshine has not disputed that the SMETA report lacks specificity in explaining the audit

findings.[67]

 CBP differentiates between a company's direct manufacturing and its supply chain.[68]

The SMETA only focuses on the specific manufacturing site, meaning it doesn't confirm that

Jiaxing Hoshine's supply chain, and therefore its silica product production, is free from forced

labor.[69]  The SMETA does little to support Jiaxing Hoshine's claim that Jiaxing Hoshine's supply

chain is clean.[70]  Jiaxing Hoshine did not conduct a verification audit to prove that it fixed issues

---

[63] *See* June 18, 2025 Questionnaire Resp., Ex. 13; July 16, 2025 Questionnaire Resp., Ex.'s F, G.

[64] *See* July 16, 2025 Questionnaire Resp., Ex. D-1-a.

[65] *See* Jiaxing Hoshine's Comments at 5-9; July 16, 2025 Questionnaire Resp., Ex. D-1-a (Jiaxing Hoshine's most recent SMETA report).

[66] *See* Jiaxing Hoshine's Comments at 5-9.

[67] *Id*.

[68] *See* July 16, 2025 Questionnaire Resp., Ex.'s C, D-1-a.

[69] *See id.*

[70] *See id.*

found during its SMETA inspection highlighted in its Corrective Action Plan Report (CAPR).[71] This failure indicates the company has not sufficiently corrected and prevented forced labor in its supply chain. Consequently, the evidence reasonably shows that silica-based products made and sold by Jiaxing Hoshine are, or are likely to be, produced with forced labor.[72]

### 2. [[      ]] Consumer Products Assurance Audit ([[      ]])

#### a.  Jiaxing Hoshine's Comments

Jiaxing Hoshine states that [[      ]] Consumer Products Assurance ([[      ]]) conducted a specialized on-site audit from October 19-20, 2022, specifically targeting the eleven ILO indicators of forced labor.[73]  Jiaxing Hoshine states that [[      ]] explicitly concluded that no forced labor was found at Jiaxing Hoshine's *facility*.[74]  Jiaxing Hoshine claims that CBP's discussion of this audit is limited to claiming it did not review companies in Jiaxing Hoshine's supply chain.[75]  Jiaxing Hoshine argues that CBP provides no evaluation of the voluminous records from this audit and ignores its specific findings.[76]

#### b.  CBP's Response

The [[      ]] audit does little to establish that Jiaxing Hoshine's operations and *supply chain* are free from forced labor.[77]  [[      ]] performed an on-site audit of conditions at Hoshine Silicon, not Jiaxing Hoshine, in October 2022.[78]  [[      ]] conducted its audit before Hoshine

---

[71] *See id.*

[72] *See* 19 C.F.R. § 12.42; June 18, 2025 Questionnaire Resp.; July 16, 2025 Questionnaire Resp.

[73] *See* Jiaxing Hoshine's Comments at 9-10.

[74] *Id.*

[75] *Id.*

[76] *Id.*

[77] *See* June 18, 2025 Questionnaire Resp., Ex. 4 at 25-26.

[78] *See* June 18, 2025 Questionnaire Resp. at 5 ("Jiaxing Hoshine respectfully requests the CBP Forced Labor Division and other relevant US government agencies to consider the following factors in evaluating its request to

Silicon transferred its assets in March 2023 and does not provide insight into Jiaxing Hoshine facilities and operations after the transfer of assets.[79]  For instance, the [[      ]] report did not provide a detailed analysis of the supply chain management controls in Jiaxing Hoshine's facilities or operations.[80]  Additionally, the [[      ]] report did not provide a detailed analysis of the supply chain even though Jiaxing Hoshine's primary silicon metal provider, [[ ]], is also subject to a WRO.[81]  As such, CBP continues to find that these audits do not demonstrate that [[      ]] reviewed any companies within Jiaxing Hoshine's supply chain. However, the supply chain is main issues in this modification, because Jiaxing Hoshine uses [[ ]] that are also subject to the Hoshine WRO.[82]  Furthermore, CBP notes that Jiaxing Hoshine misstates the standard necessary to issue/maintain a WRO under 19 U.S.C. §1307.  19 U.S.C. §1307's implementing regulations require that the information "reasonably, but not conclusively indicates" that forced labor exists.[83]  CBP does not need affirmative confirmation that forced labor exists within Jiaxing Hoshine's production process or *supply chain* to issue/maintain a WRO.[84]  For example, Jiaxing Hoshine's primary silicon metal provider, [[ ]], is also subject to a WRO.[85]  This fact, combined with Hoshine Silicon's subsidiaries' vertical integration (i.e., intertwined supply chain), raises continued concerns regarding cross-

---

exclude Jiaxing Hoshine's production supply chain from the Hoshine WRO."), Ex. 4; July 16, 2025 Questionnaire Resp., Ex. C.

[79] *See* June 18, 2025 Questionnaire Resp. at 5 ("Jiaxing Hoshine respectfully requests the CBP Forced Labor Division and other relevant US government agencies to consider the following factors in evaluating its request to exclude Jiaxing Hoshine's production supply chain from the Hoshine WRO."), Ex. 4; July 16, 2025 Questionnaire Resp., Ex. C.

[80] *See* July 16, 2025 Questionnaire Resp., Ex. C.

[81] *See* June 18, 2025 Questionnaire Resp., Ex. 7.

[82] *See id.* at 5.

[83] *See* 19 CFR § 12.42(e).

[84] *See id.* §§ 12.42-12.45.

[85] *See* June 18, 2025 Questionnaire Resp., Ex. 7.

contamination of certain raw material inputs (i.e., silicon metal), as long as Jiaxing Hoshine uses Hoshine Silicon's subsidiaries as its suppliers.[86]  Accordingly, Jiaxing Hoshine's use of such raw materials provides CBP with reasonable, but not conclusive evidence that Jiaxing Hoshine continues to produce its products, in part, with forced labor.[87]

### 3. Follow-Up Verification

#### a. Jiaxing Hoshine's Comment

Jiaxing Hoshine states that CBP faults it for not securing a follow-up audit.[88]  However, Jiaxing Hoshine contends that a follow-up audit is only relevant when an initial audit finds forced labor conditions and recommends a corrective action plan.[89]  Since neither the SMETA nor the [[      ]] audit found any forced labor conditions or recommended corrective actions, Jiaxing Hoshine asserts that a follow-up audit was unnecessary and irrelevant to its situation.[90]

#### b. CBP's Response

Jiaxing Hoshine incorrectly argues that the initial audits did not find deficiencies at the sites.  The SMETA and [[      ]] audit found deficiencies at the sites.[91]  CBP noted that Jiaxing Hoshine failed to provide follow-up verifications for issues identified in its SMETA Corrective Action Plan Report (CAPR), as open.[92]  For example, Jiaxing Hoshine's SMETA identified fire

---

[86] *See* June 18, 2025 Questionnaire Resp., Ex.'s 5, 7, 13; July 16, 2025 Questionnaire Resp., Ex. A-7.

[87] *See* 19 CFR §§ 12.42-12.45.

[88] *See* Jiaxing Hoshine's Comments at 10.

[89] *See id.*

[90] *See id.*

[91] *See* June 18, 2025 Questionnaire Resp., Ex. 4 at 29-30; July 16, 2025 Questionnaire Resp., Ex. D-1-a (SMETA found fire safety issues and the Eurofins audit stated that forced labor risk existed in the form of training fee contracts, PPE fees, and health exam fees.  "The existence of these practices could be considered an impediment to workers terminating employment based on the obligation to the factory."  CBP notes that Jiaxing Hoshine has not demonstrated through verification that these issues no longer exist).

[92] *See* July 16, 2025 Questionnaire Resp., Ex.'s C, D-1-a.

safety as an issue in the CAPR.[93]  As CBP noted in the *WRO and Finding Modification Guide*, CBP recommends that entities subject to a WRO or Finding conduct not only an audit or assessment to initially assess forced labor, but also a secondary or verification audit to verify any actions taken under CAPR implementation and any issues related to the ILO indicators.[94]  While not itself an indicator of forced labor, inadequate fire safety can provide some evidence of unsafe working and living conditions, which is an ILO indicator.  As such, CBP continues to find that follow-up verification is warranted to ensure the correction and prevention of forced labor.

Accordingly, CBP determines that it would have needed a follow-up audit to determine whether Jiaxing Hoshine had effectively remediated forced labor conditions in its supply chain.

### C.  Jiaxing Hoshine's Anti-Forced Labor Compliance Program

#### a.  Jiaxing Hoshine's Comment

Jiaxing Hoshine asserts that its anti-forced labor compliance program, developed with the assistance of Arche Advisors, is comprehensive and effective.[95]  Jiaxing Hoshine states that this program includes specialized training and core policy documents.[96]  The company points out that CBP had previously given positive feedback on its proposed approach for WRO modification, making CBP's current discrediting of the plan inconsistent and arbitrary.[97]

---

[93] *See id.*

[94] *See* Modification Guide at 11.

[95] *See* Jiaxing Hoshine's Comments at 10-13.

[96] *See id.*

[97] *See id.*

b.  CBP's Response

CBP does not question whether Jiaxing Hoshine's forced labor policies exist; it questions the veracity of Jiaxing Hoshine's suppliers' statements.[98]  Arche Advisors did not verify the *effectiveness* of Jiaxing Hoshine's policies through audits.[99]  Furthermore, because one of the suppliers that provided a questionnaire is also subject to a WRO, CBP has reason to question the effectiveness of Jiaxing Hoshine's anti-forced labor compliance program.[100]  An effective anti-forced labor compliance program should flag high-risk suppliers.[101]  For example, Jiaxing Hoshine continues to use [[                    ]] as a primary supplier.[102]  As such, CBP continues to determine that the existence of such policy documents is neither sufficient evidence of effective remediation nor sufficient evidence that Jiaxing Hoshine no longer uses forced labor in its production process.

**D. Sales Trace Documentation and Evidence Requested by CBP**

a.  Jiaxing Hoshine's Comment

Jiaxing Hoshine challenges CBP's finding that its submission of two months of supply chain traceability data was insufficient.[103]  It argues that CBP had never previously communicated a requirement for documentation exceeding two months, making this a new and arbitrary standard.[104]  The  company also states that CBP's reference to a twelve-month record standard in [[       ]] guidance pertains to working hours and wages, not supply chain

---

[98] *See* June 18, 2025 Questionnaire Resp. at 8-9; July 16 Questionnaire Resp. at 16.

[99] *See* July 16, 2025 Questionnaire Resp. at 16.

[100] *See* June 18, 2025 Questionnaire Resp., Ex. 13.3.2.

[101] *See id.*, Ex. 7.

[102] *See id.*

[103] *See* Jiaxing Hoshine's Comments at 13-14.

[104] *See id.*

traceability, so is not relevant to the question of forced labor remediation.[105]

> b. CBP's Response

CBP did not provide a specific period necessary to sufficiently establish a clear supply chain because CBP considers the necessary period of evidence on a case-by-case basis.  In this case, because Hoshine Silicon and its subsidiaries are vertically integrated, and Jiaxing Hoshine uses [[                    ]]'s silicon metal, CBP determines that a longer period of evidence is even more critical to establish Jiaxing Hoshine's material purchase practices or trends to ensure compliance with 19 U.S.C. § 1307.  Jiaxing Hoshine's petition for modification included purchase invoices containing the names of entities subject to the Hoshine WRO, suggesting a need for broader scrutiny.[106]

For clarity, CBP acknowledges that Jiaxing Hoshine provided  twelve-months of working hours and wage records to [[      ]].[107]  Nonetheless, the Sedex guidance illustrates industry common practices, i.e., standards regarding recordkeeping and the review of those records.[108]  CBP also highlights the phrase "at least" in those standards, meaning Jiaxing Hoshine is thus clearly aware that it needs to provide records that cover a longer duration than two months to reviewers, (e.g., [[      ]]).  As such, it should have anticipated that CBP would likely require a larger temporal period to understand its supply chain, especially because it requested that CBP

---

[105] *See id.*

[106] *See* June 18, 2025 Questionnaire Resp., Ex. 7; July 16, 2025 Questionnaire Resp., Ex. A-17.

[107] *See* July 16, 2025 Questionnaire Resp., Ex. D-1-a.

[108] *See* July 16, 2025 Questionnaire Resp., Ex. B-2-1 at 98 ([[      ]] stating that a company under review should supply at least the last 12 month records of working hours and wages.); SGS, *Sedex Members Ethical Trade Audit (SMETA) Improve Ethical Trading and CSR Best Practices* 1, (2024) https://www.sgs.com/-/media/sgscorp/documents/corporate/brochures/sgs-kn-sedex-members-ethical-trade-audit-smeta-product-sheet-en.cdn.en-TN.pdf; Sasha Courville, *Social Accountability Audits: Challenging or Defending Democratic Governance*, 25 Law & Pol'y 269, 271-74 (July 2003).

evaluate its supply chain in its petition for modification.[109]  CBP notes that Jiaxing Hoshine did not explain in its December 23, 2025 rebuttal comments how or why two months of data is sufficient to establish that goods are not being produced, wholly or in part, with forced labor.[110]

Efforts to verify the absence of forced labor within global supply chains require sustained scrutiny that captures the full complexity of sourcing practices, labor conditions, and corporate affiliations.[111]  To credibly assess whether a supply chain is free from forced labor, a company's production, auditors, law enforcement, and other assessors must examine procurement histories, supplier relationships, and production inputs over extended periods.[112]  This assessment includes identifying and scrutinizing patterns of affiliations and scrutinizing upstream sourcing beyond immediate suppliers.[113]

Furthermore, when determining whether to modify a WRO, the structure of the company itself is a factor that CBP must consider.[114]  In the instant case, Hoshine Silicon is vertically integrated.[115]  Merriam-Webster defines vertical integration as the combining of manufacturing

---

[109] *See* June 18, 2025 Questionnaire Resp. at 5 ("Jiaxing Hoshine respectfully requests the CBP Forced Labor Division and other relevant US government agencies to consider the following factors in evaluating its request to exclude Jiaxing Hoshine's production supply chain from the Hoshine WRO.")

[110] *See* Jiaxing Hoshine's Comments at 13-14.

[111] *See* Modification Guidance; Pedro J. Gris Seoane, *Use and Limitations of Checklists. Other Strategies for Audits and Inspections*, 6 Quality Assurance J. 105, 133-36 (2001) (explaining limitations of using checklists during auditing); Carlin Dowling et al., *Public Oversight of Audit Firms: The Slippery Slope of Enforcing Regulation*, 54 Abacus 353, 354-56 (2018) (explaining how checklist have minimal benefit to audits).

[112] *See* Novotny, *How Human Rights are Reshaping Sustainable Procurement* (Aug. 5, 2025); Genevieve LeBaron, *supra*, at 243-45 (highlighting the need for visibility beyond Tier-1 suppliers) ("…forced labor and slavery are concentrated in the sectors and portions of supply chains where subcontracting and outsourcing are the highest").

[113] *See* Richard M. Locke et al., *supra*, at 20 (October 2007); Tomas Novotny, *How Human Rights are Reshaping Sustainable Procurement* (Aug. 5, 2025), https://www.sedex.com/blog/human-rights-reshaping-sustainable-procurement/; Olivia Thomson, *What is a Social Audit and Why Are They Important?* (Sept. 25, 2024), https://www.sedex.com/blog/what-is-a-social-audit-and-why-are-they-important/.

[114] *See* Modification Guidance.

[115] *See* June 18, 2025 Questionnaire Resp., Ex. 7 (record evidence indicates that [[                    ]] is Jiaxing Hoshine's only silicon metal supplier); July 16, 2025 Questionnaire Resp., Ex.'s A-3, A-7.

operations with source of materials and/or channels of distribution under a single ownership or management especially to maximize profits.[116]  Hoshine Silicon's vertical integration leads to concerns about the transparency of its supply chain, including about the relationship between it and Jiaxing Hoshine,  that a two-month window does not allow CBP to fully analyze.

Transparency in a vertically integrated structure like the one used by Hoshine Silicon and its subsidiaries requires supply-chain mapping, verification, and cross-checking across units. CBP has noted that suppliers may design concealment strategies that temporarily alter practices during audit periods, which is why CBP requires robust temporal evidence to detect patterns and trends inconsistent with 19 U.S.C. § 1307 compliance.[117]  Because concealment strategies thrive in short-term reviews, two-months of supply chain information does not further CBP's aim of understanding Jiaxing Hoshine's supply chain, and in turn its production process.[118]  To fully assess compliance with 19 U.S.C. § 1307, the agency requires a temporal period longer than 2 months.[119]

A vertically integrated company warrants particular scrutiny when assessing a request for

---

[116] *See* Vertical Integration, Merriam-Webster, https://www.merriam-webster.com/dictionary/vertical%20integration (last visited Feb. 6, 2026).

[117] *See* July 16, 2025 Questionnaire Resp., Ex. B-2-1 at 98 ([[        ]] stating that a company under review should supply at least the last 12 month records of working hours and wages.); SGS, *Sedex Members Ethical Trade Audit (SMETA) Improve Ethical Trading and CSR Best Practices* 1, (2024) https://www.sgs.com/-/media/sgscorp/documents/corporate/brochures/sgs-kn-sedex-members-ethical-trade-audit-smeta-product-sheet-en.cdn.en-TN.pdf; Sasha Courville, *supra*, at 271-74.

[118] *See* July 16, 2025 Questionnaire Resp., Ex. B-2-1 at 98 ([[        ]] stating that a company under review should supply at least the last 12 month records of working hours and wages.); SGS, *Sedex Members Ethical Trade Audit (SMETA) Improve Ethical Trading and CSR Best Practices* 1, (2024) https://www.sgs.com/-/media/sgscorp/documents/corporate/brochures/sgs-kn-sedex-members-ethical-trade-audit-smeta-product-sheet-en.cdn.en-TN.pdf; Sasha Courville, *supra*, at 271-74.

[119] *See* Modification Guidance at 1; July 16, 2025 Questionnaire Resp., Ex. B-2-1 at 98 ([[        ]] stating that a company under review should supply at least the last 12 month records of working hours and wages.); SGS, *Sedex Members Ethical Trade Audit (SMETA) Improve Ethical Trading and CSR Best Practices* 1, (2024) https://www.sgs.com/-/media/sgscorp/documents/corporate/brochures/sgs-kn-sedex-members-ethical-trade-audit-smeta-product-sheet-en.cdn.en-TN.pdf; Sasha Courville, *supra*, at 271-74.

a modification because its inherent structure often consists of affiliates or subsidiaries with intertwined supply chains to maximize profits and resource allocation.  Because the record indicates Hoshine Silicon is vertically integrated and its subsidiaries can extract, process, and manufacture raw materials, and because CBP's enforcement of 19 U.S.C. § 1307 applies to every internal tier of Hoshine Silicon (i.e., Hoshine's subsidiaries) producing or using silica in their production, CBP continues to find reasonable evidence that Hoshine and its subsidiaries  produce silica-based products wholly or in part with forced labor in every subsequent stage of production.[120]  As stated above, this structural reality significantly increases the need for transparency within Jiaxing Hoshine's supply chain, and in turn its production process, once a WRO is issued.  CBP finds that Jiaxing Hoshin has not provided sufficient transparency to warrant a modification.

Moreover, CBP notes that WROs remain in effect until evidence shows that the goods are no longer "being or likely to be produced . . . wholly or in part with forced labor . . . ."[121]  Such a determination necessarily depends on sustained proof rather than short-term observations (i.e., two-months), particularly given Hoshine Silicon's subsidiaries' vertical integration.[122]

In an event, regardless of the temporal period of records provided, because Hoshine Silicon owns or manages each subsidiaries' production of its silica based products, it must demonstrate a need transparency of its supply chain, and show evidence of forced labor mitigation, across *all* internal units (i.e., all subsidiaries), to demonstrate that its products are not

---

[120] *See* July 16, 2025 Questionnaire Resp., Ex.'s A-3, A-7.

[121] *See* 19 U.S.C. § 1307; 19 C.F.R. § 12.42(a).

[122] *See* Modification Guidance at 1.

produced in whole or in part with forced labor.[123]

Thus, CBP disagrees with Jiaxing Hoshine's contention that a "greater than two months" documentation standard for a non-compliant vertically integrated company that is subject to a WRO is arbitrary and capricious.[124]

### E. Intertwinement of Jiaxing Hoshine and Hoshine Silicon

#### 1. Evidence of Sales Between Jiaxing Hoshine and Hoshine Silicon [[ ]]

##### a. Jiaxing Hoshine's Comment

Jiaxing Hoshine states it has never procured raw materials from Hoshine Silicon or from Xinjiang-based suppliers, thereby demonstrating its operational independence and lack of connection to the original WRO's basis.[125]  Jiaxing Hoshine argues that CBP has not provided any direct evidence to support its claims that any silica-based raw materials that are subject to the Hoshine WRO are at any risk of being traded between Hoshine Silicon and Jiaxing Hoshine or [[ ]].[126]

##### b. CBP's Response

It is reasonable for CBP to find that Hoshine Silicon's intercompany transfer ledger demonstrates sales of goods to Jiaxing Hoshine.[127]  Hoshine Silicon's intercompany transfer ledger shows transactions of "goods and services" from its affiliated entities that remain subject to the WRO.[128]  Jiaxing Hoshine argues that "the mere existence of transfer records

---

[123] *See* July 16, 2025 Questionnaire Resp. at 4, Ex.'s A-3, A-*7; see also* Genevieve LeBaron, *supra* (highlighting the need for visibility beyond Tier-1 suppliers).

[124] *See* Jiaxing Hoshine's Comments at 13-14.

[125] *See id.* at 14-16.

[126] *See id.*

[127] *See id.*

[128] *See* June 18, 2025 Questionnaire Resp., Ex. 7.

does not demonstrate actual transactions."[129] However, the intercompany transfer ledger demonstrates that value was transferred from one account to another.[130]  Without particular evidence to the contrary, it is reasonable for CBP to continue to find that it is likely that some of these transactions for the "cash from sales of goods and services" and "other cash payment related to operating activities" are for the production of silica-based product.[131]

Furthermore, CBP disagrees with Jiaxing Hoshine's claim that CBP has not provided direct evidence to support its claims that any silica-based raw materials that are subject to the Hoshine WRO are at any risk of being traded between Hoshine Silicon and Jiaxing Hoshine or [[                                        ]].[132]  Jiaxing Hoshine stated that Hoshine Silicon operates as a "centralized corporate structure [that] enables coordinated…efficient resource allocation, and robust oversight across Hoshine Silicon's domestic and international operations."[133]  Hoshine Silicon's corporate structure allows for efficient resource sharing among its operations and subsidiaries.[134]  This interconnectedness makes it reasonable to believe that Hoshine Silicon's silica-based goods, including those from Jiaxing Hoshine, are produced with forced labor.[135] This is because Hoshine Silicon's subsidiaries, which are subject to a Withhold Release Order

---

[129] *See* Jiaxing Hoshine's Comments at 15.

[130] *See* June 18, 2025 Questionnaire Resp., Ex. 7.

[131] *See e.g.*, *See* July 16, 2025 Questionnaire Resp., Ex. A-16 (Intercompany Ledgers of Hoshine Silicon) (CBP observed that, in 2024, there were approximately [[                                                    ]] described as [[    ]]  in 2024 where Hoshine Silicon received money from Jiaxing Hoshine for the sale of goods); July 16, 2025 Questionnaire Resp., Ex. A-17 at 2154 and 5922 (Intercompany Transfer Ledger of Jiaxing Hoshine Document # [[    ]] for Hoshine Silicon and Document # [[        ]] Hoshine Silicon [[    ]]).

[132] *See* Jiaxing Hoshine's Comments at 14-16.

[133] *See* July 16, 2025 Questionnaire Resp., Ex.'s A-16, A-17 (Intercompany Ledgers of Hoshine Silicon and Jiaxing Hoshine); *See* Memorandum from Field Dir., Off. Trade, Trade Regul. Audit S.F, Cal. on Exhibit A Submitted by Jiaxing Hoshine, to Trisha Tran, Branch Chief, Enf't & Compliance, Forced Lab. Div., (Oct. 8, 2025) (on file with U.S. Customs & Border Prot.) (Trade Regulatory Audit Analysis).

[134] *See* July 16, 2025 Questionnaire Resp. at 4, Ex. A-3 at 162-63.

[135] *See id.*

(WRO), produce silica-based materials that Jiaxing Hoshine uses..[136]  For example, Jiaxing

Hoshine's supply chain mapping demonstrates that [[                               ]], which is

subject to the Hoshine WRO, supplies silicon metal to Jiaxing Hoshine.[137]  In addition, Jiaxing

Hoshine's intercompany transfers ledger suggests these purchases.[138]  Hoshine Silicon's

subsidiaries are all subject to the Hoshine WRO.[139]  As such, CBP continues to determine that

Jiaxing Hoshine's use of [[                               ]]'s silicon metal precludes a finding of

sufficient evidence of effective remediation *because* [[                               ]] remains

subject to the WRO.[140]

### 2. Corporate Separateness of Production Facilities Owned by Jiaxing Hoshine

#### a. Jiaxing Hoshine's Comments

Jiaxing Hoshine refutes CBP's claim that it is "intertwined" with Hoshine Silicon, implying a

shared risk of forced labor.[141]  Jiaxing Hoshine provides evidence of a legal asset transfer and

asserts that Hoshine Silicon is solely a group management entity without production capacity.[142]

#### b. CBP Comments

Using the plain language definitions of "intertwined" and "supply chain," CBP defines

an "intertwined supply chain" as a supply chain in which multiple companies, processes, or

flows are interconnected.[143]  Contrary to Jiaxing Hoshine's assertion, its petition does not

---

[136] *See id.*

[137] *See* June 18, 2025 Questionnaire Resp. at Exhibit 7.

[138] *See* July 16, 2025 Questionnaire Resp., Ex.'s A-16, A-17 (Intercompany Ledgers of Hoshine Silicon and Jiaxing Hoshine).

[139] *See id*.

[140] *See* June 18, 2025 Questionnaire Resp., Ex. 7, 13.

[141] *See* Jiaxing Hoshine's Comments at 14-16.

[142] *See id.*

[143] **Intertwined:**

illustrate that its supply chain is not intertwined with its parent and sibling entities.[144]  The record illustrates that Jiaxing Hoshine is intertwined with Hoshine Silicon and its subsidiaries' data, logistics, and operations, including those in Xinjiang.[145]  For example, exhibit 7.2 of Jiaxing Hoshine's June 18, 2025 questionnaire response shows purchase orders containing the letterhead of a Hoshine Silicon affiliate in Xinjiang [[                                ]] used in the purchase of [[                        ]]'s raw material inputs, illustrating Hoshine Silicon's intertwined supply chain.[146]  Furthermore, as discussed above, Jiaxing Hoshine's intercompany transfer ledger shows purchases of *"goods and services"* from its affiliated entities that remain subject to the WRO.[147]  Hoshine Silicon's role as a management entity, combined with these interparty transactions for "goods and services" between Hoshine Silicon and its subsidiaries calls into question Jiaxing Hoshine's assertion that it is not intertwined with Hoshine Silicon and its other subsidiaries.[148]

> As stated previously, the WRO itself is not being challenged in this litigation, and it

---

(1) if two or more things intertwine or are intertwined, they are twisted together so that they are very difficult to separate; (2) to be or become very closely connected with something/somebody else. *See* Intertwined, Oxford Learner's Dictionaries, https://www.oxfordlearnersdictionaries.com/definition/english/intertwine (last visited Feb. 5, 2026).

**Supply Chain:**

the series of processes involved in the production and supply of goods, from when they are first made, grown, etc. until they are bought or used. *See* Supply Chain, Oxford Learner's Dictionaries, https://www.oxfordlearnersdictionaries.com/definition/english/supply-chain?q=supply+chain (last visited Feb. 5, 2026).

[144] *See* June 18, 2025 Questionnaire Resp., Ex.'s 7, 13.

[145] *See id.*, Ex. 7.2 at 150, 188.

[146] *Id.*

[147] *See* July 16, 2025 Questionnaire Resp., Ex.'s A-16, A-17 (Intercompany Ledgers of Hoshine Silicon and Jiaxing Hoshine); Trade Regulatory Audit Analysis; June 18, 2025 Questionnaire Resp., Ex. 7.

[148] *See* July 16, 2025 Questionnaire Resp., Ex.'s A-16, A-17 (Intercompany Ledgers of Hoshine Silicon and Jiaxing Hoshine); Trade Regulatory Audit Analysis.

remains in effect for Hoshine Silicon and *all* its subsidiaries, regardless of their location.[149]  In this instance, the evidence of intercompany transactions on the record demonstrates that at least one of Jiaxing Hoshine's raw material inputs comes from a company subject to a WRO, namely [[                    ]].[150]

Furthermore, CBP emphasizes that effective forced labor enforcement depends on detailed information.[151]  A vertically integrated supply chain such as the one used by Jiaxing Hoshine can obscure transparency regarding the origination of raw material inputs because internal transfers often lack the documentation normally generated in arm's length transactions.[152]  For example, in Jiaxing Hoshine's supply chain tracing material, every sales contract between Hoshine Silicon and outside suppliers contains banking account numbers, but the sales contracts between Hoshine Silicon and [[                    ]] do not contain the supplier's (i.e., [[                    ]]), banking information .  This banking information is important information to illustrate arms-length transactions, and in turn whether Jiaxing Hoshine is "independent" from Hoshine Silicon and its sister companies.[153]

As such, CBP continues to determine that Jiaxing Hoshine's use of [[ ]]'s silicon metal does not demonstrate sufficient evidence of effective remediation because [[

---

[149] *See supra*, Section II.A.

[150] *See* June 18, 2025 Questionnaire Resp., Ex. 7.2 at 150.

[151] *See* July 16, 2025 Questionnaire Resp., Ex. B-2-1 at 98 ([[      ]] stating that a company under review should supply at least the last 12-month records of working hours and wages.)

[152] *See* July 16, 2025 Questionnaire Resp., Ex. B-2-1 at 98 ([[      ]] stating that a company under review should supply at least the last 12 month records of working hours and wages.); SGS, *Sedex Members Ethical Trade Audit (SMETA) Improve Ethical Trading and CSR Best Practices* 1, (2024) https://www.sgs.com/-/media/sgscorp/documents/corporate/brochures/sgs-kn-sedex-members-ethical-trade-audit-smeta-product-sheet-en.cdn.en-TN.pdf; Sasha Courville, *Social Accountability Audits: Challenging or Defending Democratic Governance*, 25 Law & Pol'y 269, 271-74 (July 2003).

[153] *See* June 18, 2025 Questionnaire Resp. at 4, Ex. 7 (the record supply chain trace materials only provide facial contracts for the sale of goods and no receipts of payment between Hoshine Silicon and [[                    ]], meaning the record only provides information of transfers of raw materials between units of Hoshine Silicon).

]] remains subject to the WRO.[154]

### III.  **Evidence Considered on Remand**

In accordance with the remand instructions, CBP comprehensively reviewed all evidence pertinent to Jiaxing Hoshine's modification request.[155]  CBP made its determination after considering all evidence submitted throughout this process, including Jiaxing Hoshine's resubmission of its original modification petition, supplemental information, and questionnaire responses.[156]

### IV.  **Final Determination**

After considering all evidence submitted throughout this process, including Jiaxing Hoshine's resubmission of its original modification petition, supplemental information, comments, and questionnaire responses, CBP affirms its denial of Jiaxing Hoshine's modification request.[157]  Jiaxing Hoshine has not sufficiently demonstrated full and effective remediation of forced labor within its operations and supply chain.[158]  For the reasons outlined above, CBP continues to determine that Jiaxing Hoshine's silica-based products remain subject to the Hoshine WRO.

### V.  **Conclusion**

CBP fully complied with the Court's order granting voluntary remand and conducted a renewed, comprehensive review of the administrative record, including all comments submitted

---

[154] *See* June 18, 2025 Questionnaire Resp. at Ex. 7; *see also* Hoshine WRO Press Release.

[155] *See* June 18, 2025 Questionnaire Resp.; Letter from Jiaxing Hoshine, to Trisha Tran, Branch Chief, Enf't & Compliance, Forced Lab. Div., (July 16, 2025) (on file with U.S. Customs & Border Prot.) (July 16, 2025 Questionnaire Resp.).

[156] *See* June 18, 2025 Questionnaire Resp.; July 16, 2025 Questionnaire Resp.

[157] *See* June 18, 2025 Questionnaire Resp.; July 16, 2025 Questionnaire Resp.

[158] *See* Modification Guidance.

in response to the draft remand redetermination.[159]   This final remand redetermination reflects CBP's final and reasoned judgment based on the totality of the evidence.[160]  CBP respectfully submits this final remand redetermination to the Court and requests that the Court sustain its determination.

---

[159] *See* June 18, 2025 Questionnaire Resp.; July 16, 2025 Questionnaire Resp.; Jiaxing Hoshine's Comments.

[160] *See supra* Section IV.A-E.